SARAH MOSS *vs.* TOWN OF WINCHESTER..

Middlesex.     January 9, 1974. — May 13, 1974.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Zoning,* Validity, Zoning district. *Constitutional Law,* Equal protection of laws, Zoning.

A zoning by-law did not violate the uniformity provisions of G.L.c. 40A, § 2, by dividing the petitioner's property into two residential zones requiring different lot sizes where the boundary between the two districts was drawn along a highway dividing the property.
[298-300]

This court did not consider the validity of a zoning by-law excluding apartments from a town where subsequent amendment of the by-law provided for the construction of apartments and where the petitioner had received a permit for construction of apartments on the land in question. [300]

Immunity under G.L.c. 40A, § 7A, from zoning restrictions which might be enacted during the seven year period following approval of the petitioner's subdivision plan did not enable her to challenge the validity of restrictions removed within that period. [300-301]

A zoning by-law was not invalid because it excluded apartments from residential zones while allowing such uses as hospitals and rest homes in these zones by special permit. [301]

PETITION filed in the Land Court on July 23, 1971.

The case was heard by *Silverio*, J.

*Jack J. Moss* for the petitioner.

*Douglas A. Randall,* Town Counsel, for the town of Winchester.

HENNESSEY, J.   The petitioner, owner of a parcel of approximately eighty-five acres on the west side of Cambridge Street (Route 3) in the respondent town, challenged on several grounds, in a petition brought under G. L. c. 240, § 14A, and G. L. c. 185, § 1 (j 1/2), the validity of the town's zoning by-law as applied to her property. A judge of the Land Court entered a decision which, in substance, found the by-law to be valid and directed that the petition should be dismissed. The petitioner appealed.

Essentially, the petitioner maintains that the by-law illegally prevents her from building garden apartment units on her tract of land. She has applied for and received a permit, under G. L. c. 40B, §§ 20-23, for the construction of low and moderate income apartments on a portion of the land. This is in apparent expectation of the sale of that portion of the land to a limited dividend corporation. Nevertheless, she asserts the unconstitutionality of the continuing restrictions imposed on her use of the entire tract. We conclude that there was no error in the judge's decision.

1. The front portion of the petitioner's acreage to a depth of 150 feet is in single residence district B, requiring a lot size of 15,000 square feet; the rear portion is in single

residence district A, requiring a lot size of 20,000 square feet. The petitioner alleges that dividing her land into two zones is illegal, as c. 40A, § 2, as amended through St. 1959, c. 607, § 1, requires that "[d]ue regard shall be paid to the characteristics of the different parts of the ... town, and the zoning regulations ... shall be the same for zones, districts or streets having substantially the same character."

The test for validity of a zoning by-law is whether it furthers any purpose included within G. L. c. 40A, §§ 2, 3. *Cross* v. *Planning Bd. of Chelmsford,* 345 Mass. 618 (1963). *Simeone Stone Corp.* v. *Oliva,* 350 Mass. 31 (1965). *Beal* v. *Building Commr. of Springfield,* 353 Mass. 640, 643 (1968). Such a by-law is presumed valid, *122 Main St. Corp.* v. *Brockton,* 323 Mass. 646, 649 (1949), and will be upheld unless arbitrary and unreasonable. *Tracy* v. *Board of Appeals of Marblehead,* 339 Mass. 205, 208 (1959). When the reasonableness of a zoning by-law is fairly debatable, the judgment of the local legislative body must be sustained. *Crall* v. *Leominster,* 362 Mass. 95, 101 (1972). The burden to prove otherwise rests on the petitioner. *Kaplan* v. *Boston,* 330 Mass. 381, 384 (1953). The fact that land is made less profitable thereby does not invalidate a by-law. *Simon* v. *Needham,* 311 Mass. 560 (1942). *Massachusetts Broken Stone Co.* v. *Weston,* 346 Mass. 657, 661 (1964). Cf. *Euclid* v. *Ambler Realty Co.* 272 U. S. 365 (1926).

The petitioner alleges that the different treatment of her homogeneous parcel of real estate is unreasonable. This argument ignores as a factor the location of Route 3. While *Cross* v. *Planning Bd. of Chelmsford, supra,* held that it was unreasonable to vary lot size *within a district* based on proximity to a public, as opposed to a private, way, it is both normal and reasonable to draw boundaries *between districts* with regard to the placement of major traffic arteries, which have considerable effect on the appropriate uses of adjacent property. District lines must be drawn somewhere and the petitioner has no legitimate complaint based on the fact that her property straddles such a line. *Tracy* v. *Board of Appeals of Marblehead,* 339 Mass. 205, 208 (1959).

This is not a case where one or two building lots are singled out for treatment different from that of the rest of the neighborhood. *Leahy* v. *Inspector of Bldgs. of New Bedford*, 308 Mass. 128 (1941). *Whittemore* v. *Building Inspector of Falmouth*, 313 Mass. 248 (1943). *Smith* v. *Board of Appeals of Salem*, 313 Mass. 622 (1943). *Atherton* v. *Building Inspector of Bourne*, 343 Mass. 284 (1961). The petitioner does not allege discriminatory treatment but rather alleges the invalidity of general district boundaries as they affect her specific property.

2. The petitioner next argues, relying on *Girsh Appeal*, 437 Pa. 237 (1970), that the total exclusion of apartments from Winchester under the zoning by-law in force at the time the petition was filed violates the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and equivalent provisions in arts. 1 and 10 of the Declaration of Rights of the Commonwealth. We have never ruled on the question whether a town may constitutionally exclude all apartments. We do note that the *Girsh* case appears to represent a minority viewpoint among courts which have spoken on this issue. Rathkopf, Zoning and Planning (3d ed.) c. 14-3 (1972 Supp.), and cases cited. There is no reason to decide this question now, however, as the town of Winchester amended its zoning by-law in 1972 to provide for the construction of apartments. That the by-law does not permit this use in the zone in which the petitioner's land lies is irrelevant. Cf. *Appeal of Groff*, 1 Pa. Commonwealth Ct. Rep. 439 (1971). Moreover, it is appropriate to mention in this regard that the record indicates that the petitioner has received a permit, in a proceeding under G. L. c. 40B, §§ 20-23, for the construction of 176 apartment units on a portion of the very land in question here. In light of these facts the petitioner's constitutional argument must be regarded, to say the least, as without substance.

3. Nevertheless, the petitioner argues that the 1972 change in the zoning by-law does not affect her constitutional position as G. L. c. 40A, § 7A, gives her immunity from such changes for seven years, based on the

approval on May 2, 1966, of a definitive subdivision plan for the front portion of her parcel by the planning board. This surprising argument misconstrues the meaning of § 7A. That statute protected the petitioner from having to comply with additional restrictions which might have been enacted during the seven-year period. The statute does not support her in arguments based on the validity of restrictions removed within that period.

4. Finally, the petitioner alleges that the prohibition of apartments in Winchester residential zones, while allowing (though by special permit only) such uses as hospitals and rest homes, is arbitrary and unreasonable. We do not agree. It is a permissible purpose of a zoning by-law to maintain an area as predominantly one of single family residences. G. L. c. 40A, § 3,[1] inserted by St. 1954, c. 368, § 2. *Belle Terre* v. *Boraas*, 416 U. S. 1 (1974). It is not unreasonable to consider that the effect of an occasional institutional use by special permit would be far less detrimental to such a purpose than would be permitting the building of apartment complexes in such an area.

*Decision affirmed.*

---

COMMONWEALTH *vs.* MICHAEL H. WHITE (No. 1).

Suffolk.    April 2, 1974. — May 13, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*District Court,* Delinquent child.  *Boston Juvenile Court.  Delinquent Child.  Superior Court,* Jurisdiction.  *Jurisdiction,* Delinquent child.  *Constitutional Law,* Due process of law.  *Rules of Court.*

The rules of the District Courts do not apply to the Boston Juvenile Court. [305-306]

Where a judge of the Boston Juvenile Court, in dismissing juvenile complaints against a boy between fourteen and seventeen years of age

---

[1] "Zoning regulations and restrictions shall be designed among other purposes to lessen congestion in the streets; to conserve health; to secure safety from fire, panic and other dangers; to provide adequate light and air; to prevent overcrowding of land; to avoid undue concentration of population; to facilitate the

A juvenile was not deprived of due process of law in that he was not given specific notice that the matter of dismissal of juvenile complaints against him and binding him over for the grand jury might be taken up at the hearing on the merits of the juvenile complaints; G. L. c. 119, § 61, itself, adequately furnishes such notice. [307]

G. L. c. 119, § 61, permitting dismissal of a juvenile complaint "if the court is of the opinion that the interests of the public require that . . . [the child] should be tried for . . . [the charge alleged in the complaint] instead of being dealt with as a delinquent child," is not unconstitutional for vagueness. [307]

FOUR INDICTMENTS found and returned in the Superior Court on September 15, 1971.

A motion to dismiss the indictments was heard by *Moynihan*, J., and the cases were heard by *Connolly*, J.

*Kay Hodge* for the defendant.

*Louis M. Nordlinger*, Assistant District Attorney, for the Commonwealth.

_____

adequate provision of transportation, water, sewerage, schools, parks and other public requirements; to conserve the value of land and buildings; to encourage the most appropriate use of land throughout the city or town; and to preserve and increase its amenities."